UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIDEL TAFOYA<br><br>    Petitioner,<br><br>  v.<br><br>DAVID HOLBROOK, Warden<br><br>    Respondent. | Case No. 1:22-cv-00932-JLT-CDB  (HC)<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS AND DECLINE TO ISSUE CERTIFICATE OF APPEALABILITY**[1]<br><br>**14-DAY DEADLINE**<br><br>(Doc. 1) |

  On July 27, 2022, Petitioner Fidel Tafoya ("Petitioner"), a state prisoner proceeding through counsel, filed a Petition for Writ of Habeas Corpus alleging two grounds for relief ("Petition"). (Doc. 1). On October 24, 2022, Respondent filed an answer (Doc. 15), arguing Petitioner was not entitled to habeas relief, and lodged the state court record in support (Docs. 13, 13-1 through 13-17). Petitioner filed a traverse on November 21, 2022. (Doc. 19). For the reasons set forth below, the undersigned recommends that the district court deny the Petition and decline to issue a certificate of appealability.

**I.  PROCEDURAL AND FACTUAL BACKGROUND**

  A jury in the Fresno County Superior Court convicted Petitioner of first-degree residential

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c)(17) (E.D. Cal. 2022).

burglary and sexual battery and found true an enhancement alleging that a nonaccomplice was present during the commission of the burglary. (Doc. 13-13 at 2; Doc. 13-1 at 251-52).[2] The court sentenced defendant to 13 years in prison. (Doc. 13-13 at 2; Doc. 13-1 at 261).

On appeal, the Fifth Appellate District Court of Appeal summarized the pertinent facts of the underlying offense:[3]

> M.T. lived with her three children, ages six, nine, and 11, in an apartment. On November 22, 2019, sometime before 2:00 a.m., M.T. was asleep in bed with her six year old when she felt a hand move up her shirt, touch her chest and stomach, and grope her. M.T. thought her son was searching for her cell phone. M.T. told her son to " 'go to sleep.' " She then heard someone "mumbling," trying to mimic a child.
>
> From the moonlight entering her room, she could see someone kneeling over her. The person, whom M.T. later identified as Tafoya, had white hair and was wearing a windbreaker jacket and pants. M.T. thought she recognized Tafoya from her job. Tafoya did not have permission to be in her apartment.
>
> M.T. got up and exclaimed, " 'You're not my son. What the hell you doing in my house?' " Tafoya abruptly stood up and quickly exited the front door of the apartment. M.T. chased him outside. Tafoya hid inside some bushes nearby.
>
> M.T. banged on her cousin's window to seek help. Tafoya emerged from the bushes and took a defiant stance against M.T. before returning to the bushes.
>
> M.T. went back inside her apartment to check on her children, who were still asleep. The police arrived within minutes after M.T. and her cousin had contacted them. Responding officers detained Tafoya in an alley nearby. He was wearing a windbreaker jacket, and he was emanating the odor of alcohol. Tafoya also had an identification card on him with the name, "Isaac Tafoya." M.T. identified Tafoya as the intruder.
>
> Later that morning, M.T.'s son found a cell phone in her living room and M.T. found an umbrella on her kitchen table. Neither item belonged to her. M.T. did not notice anything else out of place in her apartment.
>
> When Tafoya was booked into custody, an officer asked Tafoya if the umbrella found in M.T.'s kitchen belonged to him. Tafoya responded affirmatively.

---

[2] Record citations herein are to the CM/ECF-assigned pages.

[3] These facts are entitled to a rebuttable presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1011 (9th Cir. 2015).

2

> M.T. later gave the cell phone to an investigator with the district attorney's office. The phone had an incoming text message directed to "Isaac," which is Tafoya's middle name. The password associated with the phone was Tafoya's Social Security number. Further, a Chrome browser installed on the phone had associated usernames of "Isaac" and "ikeforpres2020."

(Doc. 13-13 at 3-4). The appellate court affirmed Petitioner's convictions. (*Id.* at 13). On March 9, 2022, the California Supreme Court summarily denied review. (*See* Doc. 13-17).

Petitioner now presents two grounds for relief, arguing (1) his Sixth Amendment rights were violated at trial when "his appointed counsel made implicit and explicit concessions … that Tafoya was the intruder in the incident and committed misdemeanor crimes, in violation of Tafoya's 'adamant' directive that he wanted his attorney to argue a 'strong, positive defense' of complete innocence to all charges;" and (2) there was insufficient evidence to support his burglary conviction because there was no evidence to support that he entered the apartment with the intent to commit theft, rape, or sexual battery while restrained. (Doc. 1 at 9-11).

## II.   STANDARD FOR FEDERAL HABEAS RELIEF

A federal court's statutory authority to issue habeas corpus relief for persons in state custody is set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). AEDPA requires a state prisoner seeking federal habeas relief to first "exhaust[t] the remedies available in the courts of the State."[4] 28 U.S.C. § 2254(b)(1)(A). Where the state court adjudicates the claim on the merits, a petitioner is not entitled to habeas relief unless the adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Deciding whether a state court's decision 'involved' an unreasonable application of federal law or was 'based on' an unreasonable determination of the facts requires the federal habeas court to 'train its attention on the particular reasons—both legal and factual—why state

---
[4] The statute allows for limited exceptions inapplicable here. *See* 28 U.S.C. § 2254(b)(1)(B).

3

courts rejected a state prisoner's federal claims." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). When the state court's decision "does not come accompanied with [its] reasons" for the decision, a federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id.* However, when there is no reasoned decision to "look through," it may be presumed—in "the absence of any indication or state-law procedural principles to the contrary"—that the state court adjudicated the claim on the merits and the petitioner must show "there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011).

Under § 2254(d)(1), a decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 62 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The petitioner must show that the state court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "State courts are accorded substantial deference. If reasonable minds reviewing the record might disagree about the finding in question, on habeas

4

review that does not suffice to supersede the trial court's determination." *Marks v. Davis*, 106 F.4th 941, 949 (9th Cir. 2024) (citations and quotation marks omitted) (quoting *Brumfield v. Cain*, 576 U.S. 305, 314 (2015)).

## III. ANALYSIS

### A. Ground One – Right to Control Defense

In ground one, Petitioner alleges he was denied his Sixth Amendment right to control his defense as recognized by the United States Supreme Court in *McCoy v. Louisiana*, 584 U.S. 414 (2018). (Doc. 1 at 9-10). Because Petitioner raised this claim on direct appeal and the California Supreme Court summarily denied review, this Court looks to the opinion of the Fifth Appellate District as the last reasoned decision. *See Wilson*, 584 U.S. at 125.

#### 1. *McCoy v. Louisiana*

Because Petitioner relies almost exclusively on *McCoy* in support of ground one, a discussion of that decision is warranted to better frame the underlying facts and arguments before the Court in the Petition.

In *McCoy*, the defendant, Robert McCoy, was charged with killing his estranged wife's mother, stepfather, and son. 584 U.S. at 418. McCoy's retained counsel, Larry English, "eventually concluded that the evidence against McCoy was overwhelming and that, absent a concession at the guilt stage that McCoy was the killer, a death sentence would be impossible to avoid at the penalty phase." *Id.* McCoy was "furious" at English's plan to concede his guilt and told English not to make the concession but instead pursue acquittal. *Id.* at 418-19. Both McCoy and English sought to end the attorney-client relationship but because trial was set to begin two days later, the trial court denied the request. *Id.* at 419.

At trial, "English told the jury there was 'no way reasonably possible' that they could hear the prosecution's evidence and reach 'any other conclusion than Robert McCoy was the cause of these individuals' death.'" *Id.* McCoy protested both at trial and outside the presence of the jury and informed the court English was "selling him out." *Id.* "The trial court reiterated that English was 'representing' McCoy and told McCoy that the court would not permit 'any other outbursts.'" *Id.* English continued to make concessions regarding McCoy's guilt throughout the

trial while McCoy testified in his own defense maintaining his innocence. *Id.* at 420. After the Louisiana Supreme Court affirmed his conviction, McCoy sought review in the United States Supreme Court. *Id.*

On review, the Court recognized that "[t]he Sixth Amendment guarantees to each criminal defendant 'the Assistance of Counsel for his defence.'" *McCoy*, 584 U.S. at 421. Because "an assistant, however expert, is still an assistant," some decisions in a criminal case are reserved to the defendant, including "whether to plead guilty, waive the right to a jury trial, testify in one's own behalf, and forgo an appeal." *Id.* at 422. As relevant to the issue before the Court, the "[a]utonomy to decide that the objective of the defense is to assert innocence" is also a decision that belongs to the defendant. *Id.*

However, the Court explained that "[p]reserving for the defendant the ability to decide whether to maintain his innocence should not displace counsel's or the court's respective trial management roles." *Id.* at 423. Specifically, "[t]rial management is the lawyer's province: Counsel provides his or her assistance by making decisions such as 'what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence.'" *Id.* at 422. For example, the Court observed that "English could not interfere with McCoy's telling the jury 'I was not the murderer,' although counsel could, if consistent with providing effective assistance, focus his own collaboration on urging that McCoy's mental state weighed against conviction." *Id.* at 424. The Court also recognized the difference from the situation in *Florida v. Nixon*, 543 U.S. 175, 181 (2004), where it held "that when counsel confers with the defendant and the defendant remains silent, neither approving nor protesting counsel's proposed concession strategy, no blanket rule demands the defendant's explicit consent to implementation of that strategy." *McCoy*, 584 U.S. at 417 (quotation marks and alterations omitted). The Court explained that unlike the defendant in *Nixon*, McCoy "opposed [counsel's] assertion of his guilt at every opportunity, before and during trial, both in conference with his lawyer and in open court." *Id.* at 424. Thus, when "[p]resented with express statements of the client's will to maintain innocence, … counsel may not steer the ship the other way." *Id.*

The Court also explained that because "a client's autonomy, not counsel's competence"

6

was at issue, the deferential standard for evaluating claims of ineffective assistance of counsel set out in *Strickland v. Washington*, 466 U.S. 668 (1984), did not apply. *Id.* at 426. Rather, because violation of the defendant's autonomy is a structural error, "such an error is not subject to harmless-error review" and requires reversal. *Id.* at 427.

### 2. Factual Background

On September 12, 2019, Petitioner requested new counsel be appointed to represent him and the trial court held a *Marsden* hearing.[5] (*See* Doc. 18 at 3; Doc. 13-1 at 132-34). Petitioner told the court that counsel "seem[ed] to believe the alleged victim's side of the story as opposed to what [Petitioner had] told him how everything went down and what happened," never discussed "particulars of the case or even strategies," and only focused on the time Petitioner was facing if convicted. (*Id.* at 4). Petitioner asserted counsel did not discuss any "positive strategy" with him. (*Id.* at 7). When allowed to respond, counsel described the background of the case and his conversations with Petitioner, including informing him that he did not "have a jury-friendly set of facts" and that the best approach would be to argue that there was insufficient evidence to establish "what his intent was at the time he entered the apartment." (*Id.* at 12-21). Counsel indicated Petitioner wanted him to defend the sexual battery charge and counsel explained to the court that he was "not going to concede it, but [he was] not going to focus [his] main defense on that. The main defense [was] what was this person's intent at the time they entered the apartment." (*Id.* at 22). The trial court concluded counsel had "provided [a] constitutionally-sufficient defense and representation and continue[d] to do so" and denied the motion for new counsel. (*Id.* at 22-23).

The case proceeded to trial and defense counsel did not call any witnesses, instead relying on the prosecution's case. (*See* Doc. 13-8 at 17). During closing argument, defense counsel highlighted that the prosecution had the burden of establishing guilt beyond a reasonable doubt and reminded the jury that Petitioner was presumed innocent. (Doc. 13-8 at 43-48). He then argued the victim's testimony did not establish the elements of sexual battery:

> It was above her chest and it was on her stomach. It was one

---
[5] *See People v. Marsden*, 2 Cal. 3d 118 (1970).

> continuous motion. I don't exactly know how it was made, but it went across her chest and -- or yeah, upper chest and stomach. Not necessarily an intimate part of the body. Close to it, though. Again, she thought it was her son at the time and told him to go back to his room.
>
> The elements that you're going to have to do is that the defendant touched an intimate part of Millissa T. Okay. Was that the touching of an intimate part? It says in there 'intimate part' and it defines the breast, anus, groin, sexual organ. That's on page 33 of your instruction. The elements are there. You've heard them a few minutes ago and you can refer to them. The touching against her will. You heard Mr. Thomas's argument that she was unconscious. You can infer from what you will from that. And touching was done for specific purpose of sexual arousal, sexual gratification, sexual abuse. Again, you're going to have to look at the evidence for that, as well, to determine whether or not those elements are met.
>
> I would argue that the defendant did not touch an intimate part of the body. … And in deciding this, if you can get there with or without a read back and you can look at the evidence and you can determine that once inside the apartment, you believe that Mr. Tafoya committed all those elements within the apartment sometime after entering it, if you can get there, you get there. I would say the evidence isn't there to suggest all the elements, but you have the final say in it.

(*Id.* at 50-51).

Counsel then addressed the burglary charge, reminding the jury that the prosecution had the burden of proof rather than Petitioner. (*Id.* at 51-52). Counsel argued that for both counts, there was a "[m]inimum of two questions. One: Was there a crime committed? … Second question was, who committed the crime or what's the identification of the person? Or you can answer the second way, who was the person?" (*Id.* at 53). To illustrate, counsel presented a hypothetical situation:

> I walk into Macy's. I go in and I go shopping and I do whatever and I walk out. Who was the one that walked in? It was me. Who was the one that walked out? It was me. Okay. The identification is not an issue. But did I commit a crime? Or to go back, somebody entered into the store and went in and started committing all this stuff, stole stuff and whatever else. Did I commit a crime? If it were me, yeah. If you can identify me as a person, did I commit a crime? Yes. What crime did I commit? And that's -- the question isn't whether or not this person committed a crime by entering the apartment, the question is what crime was it, and the prosecution is asserting it was a burglary. So that's what you need to focus on. Not whether or not a crime was committed, but was the crime the crime the prosecution is asserting was committed at the time.

8

(*Id.*).  Counsel argued that the prosecution had "to prove that when Mr. Tafoya entered, when this person entered the apartment -- and that's assuming you get to Count 2 and it was Mr. Tafoya -- what was the intent when he entered?"  (*Id.* at 55-56).

On appeal, Petitioner argued "his trial counsel violated his Sixth Amendment right to control the objective of his defense by conceding Tafoya had entered the victim's apartment with the intent to commit a lesser offense."  (Doc. 13-13 at 2).  The appellate court rejected this argument, concluding the record did not support "that defense counsel conceded the issue of identity, or that Tafoya vigorously objected to trial counsel's proposed trial strategy."  (*Id.* at 9).  The appellate court set out the relevant law under *McCoy* but found the facts in *McCoy* distinguishable from Petitioner's case.  (*Id.* at 11-13).  The court explained:

> Here, trial counsel did not emphasize the issue of identity in his closing argument, nor did he concede Tafoya was the intruder in M.T.'s apartment. His argument was primarily focused on the issue of the intruder's intent when he entered M.T.'s apartment. Further, the full context of the record makes clear that any argument made by trial counsel concerning whether Tafoya's conduct had met the elements for committing a sexual battery was premised upon the jury initially finding that Tafoya was indeed the intruder. This was not a concession of Tafoya's guilt.
>
> Trial counsel's statements in his closing argument were fully consistent with the trial strategy he had proposed at the *Marsden* hearing. At no point after trial counsel had discussed his intended strategy did Tafoya object or voice his disagreement. Upon this record, we simply do not know if Tafoya acquiesced to trial counsel's strategy. We are, however, persuaded that trial counsel did not "concede guilt over [Tafoya's] *intransigent and unambiguous* objection." (*McCoy*, *supra*, 138 S.Ct. at p. 1507, italics added.) Tafoya's argument that his Sixth Amendment right to control the objective of his defense was violated is without merit.

(*Id.* at 13).

### 3. Arguments and Analysis

Petitioner argues the state appellate court's rejection of his claim was contrary to *McCoy* because "a defense which is an exercise in brinkmanship with regard to whether the concessions are explicit, is still a violation of *McCoy* if it is clear that the defendant's autonomy to decide that the objective of the defense is to assert innocence has been ignored, both in fact and in spirit."  (Doc. 1 at 21 (quotation marks and alterations omitted)).  Additionally, Petitioner argues "the

9

1    state court made serious factual errors and omissions by disregarding defense counsel's explicit
2    concessions regarding Tafoya's identity as the intruder (and guilt on lesser charges), and by
3    misstating that Tafoya did not objected [sic] to trial counsel's proposed trial strategy when, in
4    fact, he had done so 'adamantly.'"  (*Id.* at 22).

5    In response, Respondent argues "it was not unreasonable for the state court to conclude
6    that Petitioner's trial counsel made no concession of guilt" and "the state court reasonably found
7    that Petitioner's Sixth Amendment right to control the objective of his defense was not violated."
8    (Doc. 15 at 15).  Respondent argues that "defense counsel did not concede Petitioner's guilt" but
9    rather "chose to focus on one element of the crime (intent) over the other (identity)" and "the
10   record does not reflect that Petitioner explicitly and repeatedly objected to defense counsel's
11   strategy."  (*Id.*).

12   Petitioner replies that the "state court's *factual* interpretation of the record is that Tafoya's
13   counsel did not explicitly concede Tafoya's identity as the intruder, *and* that Tafoya did not
14   clearly and adequately indicate his defense directive to his counsel;" the "*legal* holding is that it is
15   reasonable to read *McCoy* … as holding that a trial attorney may totally overrule his client's
16   clearly-stated defense directive of complete innocence so long as the attorney does not concede
17   guilt to the jury in explicit terms;" and to prevail on this ground, *Respondent* "must demonstrate
18   that the state court was not unreasonable in *both* its legal holding *and* its factual interpretation."
19   (Doc. 19 at 6).

20   As an initial matter, Petitioner's traverse indicates a fundamental misunderstanding of
21   who carries the burden on federal habeas review.  Contrary to his assertion that *Respondent* must
22   show that the state court's decision was not unreasonable, "to obtain relief in federal court, a
23   *petitioner* bears the burden of demonstrating that the state court's ruling 'was so lacking in
24   justification that there was an error well understood and comprehended in existing law beyond
25   any possibility for fairminded disagreement.'" *Prescott v. Santoro*, 53 F.4th 470, 477 (9th Cir.
26   2022) (emphasis added) (quoting *Harrington*, 562 U.S. at 103).  Thus, it is *Petitioner* who bears
27   the burden and as addressed below, he has failed to carry that burden.

28   Addressing Petitioner's factual argument first, the state court's decision was not based on

1    an unreasonable determination of the facts.  Petitioner argues counsel explicitly conceded his
2    presence in the apartment when he made statements during closing that "*the defendant* did not
3    touch an intimate part of the body" and "you believe that *Mr. Tafoya* committed all those
4    elements within the apartment sometime after entering it."  (Doc. 1 at 25).  However, Petitioner
5    relies on these two statements without considering the closing as a whole.  While counsel did
6    make the statements Petitioner identifies, they were not concessions that Petitioner was in the
7    apartment but rather counsel's attempt to highlight that to return a guilty verdict, the jury was
8    required to find that (1) Petitioner was the individual in the apartment *and* (2) he touched an
9    intimate part of the victim's body.  (*See* Doc. 13-8 at 50 ("The elements that you're going to have
10   to do is that the defendant touched an intimate part of Millissa T."); *id.* at 51 ("And in deciding
11   this, if … you can look at the evidence and you can determine that once inside the apartment, you
12   believe that Mr. Tafoya committed all those elements within the apartment sometime after
13   entering it, if you can get there, you get there. I would say that the evidence isn't there to suggest
14   all the elements, ….").  Counsel specifically clarified that for both counts, the jury needed to
15   determine "who committed the crime or what's the identification of the person?"  (*Id.* at 53).
16   Thus, it was not unreasonable for the state court to conclude that counsel did not explicitly
17   concede Petitioner was in the apartment.
18       Petitioner also argues "[t]he state court's determination that there was no evidence of
19   Tafoya's having communicated a defense directive to his counsel, that he was innocent of all
20   charges and was not the intruder, was unreasonable by any metric" and highlights statements he
21   made at or before the *Marsden* hearing to support his argument.  (Doc. 1 at 33-35).  However, this
22   argument also fails because it appears to be based on a misinterpretation of the appellate court's
23   decision.  The state appellate court did not state that Petitioner *never* informed counsel of his
24   innocence objective but rather concluded "[t]rial counsel's statements in his closing argument
25   were fully consistent with the trial strategy he had proposed at the *Marsden* hearing" and "[a]t no
26   point *after trial counsel had discussed his intended strategy* did Tafoya object or voice his
27   disagreement." (Doc. 13-13 at 13).  The court observed that "[u]pon this record, we simply do
28   not know if Tafoya acquiesced to trial counsel's strategy." (*Id.*).  Petitioner wholly fails to cite

11

1  any evidence in the record indicating that after counsel informed the court of his intention to not
2  concede identity but to focus on intent, Petitioner continued to voice his objections to counsel's
3  approach. Thus, the state court's factual determination was not unreasonable.

4  Turning to the legal analysis, the state court's decision is not contrary to, or an
5  unreasonable application of, *McCoy*. There is no dispute that "it is the defendant's prerogative,
6  not counsel's, to decide on the objective of his defense: to admit guilt in the hope of gaining
7  mercy at the sentencing stage, or to maintain his innocence, leaving it to the State to prove his
8  guilt beyond a reasonable doubt." *McCoy*, 584 U.S. at 417-18. However, this does not alter that
9  "trial management is the lawyer's province," including "what arguments to pursue." *Id.* at 422.
10 *See United States v. Audette*, 923 F.3d 1227, 1236 (9th Cir. 2019) (noting under *McCoy*, "a
11 represented defendant surrenders control over tactical decisions, such as … which arguments to
12 advance."). Here, as in *McCoy*, Petitioner's objective was to maintain his innocence. As
13 discussed above, counsel did not override that objective because he did not concede Petitioner's
14 guilt. Rather, counsel made strategic decisions about how best to try an achieve Petitioner's
15 objective. *McCoy* contemplated such a circumstance approvingly. *See id.* at 424 (explaining
16 counsel could "focus his own collaboration on urging that McCoy's mental state weighed against
17 conviction" even after McCoy testified that he was innocent). Thus, the state court's decision
18 was neither contrary to, nor an unreasonable application of, the Supreme Court's decision in
19 *McCoy*.

20 Petitioner argues *McCoy* applies when counsel's actions violate a defendant's autonomy
21 to decide the objective of the defense, even in the absence of an explicit concession. (Doc. 1 at
22 21). However, he fails to cite any precedent to support this extension of *McCoy*. While a
23 circumstance may exist where counsel's actions are severe enough to infringe on a defendant's
24 rights even in the absence of an explicit concession, the facts presented here do not warrant such
25 an extension of *McCoy*, especially given *McCoy*'s holding that a violation is structural error
26 requiring reversal. In the absence of clear precedent, Petitioner's claims challenging *how* counsel
27 attempted to achieve Petitioner's objective are better addressed under the deferential standard for
28 ineffective assistance of counsel claims set out in *Strickland*. *See, e.g., Stephens v. Myrick*, 809

Fed. Appx. 389, 389-90 (9th Cir. 2020) (resolving petitioner's *McCoy* argument in connection with his ineffective assistance of counsel claim). No such claim was argued in state court or asserted in the Petition and, thus, is not before this Court. *See Green v. Henry*, 302 F.3d 1067, 1070 n.3 (9th Cir. 2002) (claims not made in a federal habeas petition need not be considered); *see also* Rule 2(c)(1), Rules Governing Section 2254 Cases in the United States District Courts (the petition "*must* specify all the grounds for relief available to the petitioner") (emphasis added).

Overall, Petitioner has failed to carry his burden of showing that the state court's rejection of his Sixth Amendment claim was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or based on an unreasonable determination of the facts. Accordingly, the undersigned recommends ground one be denied.

**B. Ground Two – Sufficiency of the Evidence**

In his second ground, Petitioner argues there was insufficient evidence to support the residential burglary conviction because there was no evidence of intent to commit the target crimes. (Doc. 1 at 38).

**1. Background**

On direct review, the state appellate court rejected Petitioner's argument that "the prosecutor failed to adduce nonspeculative evidence showing that he had the intent to commit theft, sexual battery by restraint, or rape when he entered M.T.'s apartment." (Doc. 13-13 at 4). The court outlined the elements of residential burglary and the standard of review of Petitioner's sufficiency claim. (*Id.*). Summarizing the evidence, the court stated:

> Tafoya entered M.T.'s locked apartment, late at night, and groped M.T. while she was asleep in bed with her six-year-old child nearby. When M.T. awoke and confronted Tafoya, he fled her apartment, assumed a defiant stance when M.T. confronted him outside, and then took flight once again. From this evidence, the jury could reasonably infer M.T. intended to commit rape or theft when he entered M.T.'s apartment.

(*Id.* at 5).

The court explained that "[u]nlawful entry, flight from the scene, and failure to provide a plausible reason for being on the premises are sufficient evidence of intent to commit theft to support a conviction of burglary. Indeed, burglarious intent can reasonably be inferred from an

13

1  unlawful entry alone." (*Id.* at 6 (internal quotations, citations, and alterations omitted)).
2  Regarding Petitioner's argument "that he did not actually steal anything, rape M.T., or restrain
3  her when he groped her," the court observed that "[t]he fact that Tafoya may have subsequently
4  abandoned his initial intent during the course of the burglary does not undermine the jury's
5  finding" that he possessed the requisite intent. (*Id.*). Because "the circumstantial evidence
6  adduced at trial supports the inference that Tafoya had entered M.T.'s apartment with the
7  requisite intent to support his conviction for first degree burglary," the appellate court affirmed
8  the conviction. (*Id.* at 8).

9  **2. Law and Analysis**

10  "[T]he Due Process Clause protects the accused against conviction except upon proof
11  beyond a reasonable doubt of every fact necessary to constitute the crime with which he is
12  charged." *In re Winship*, 397 U.S. 358, 364 (1970). Under *Jackson v. Virginia*, 443 U.S. 307
13  (1979), which sets forth the federal standard for determining a sufficiency of the evidence claim,
14  such a claim "can only succeed when, viewing all the evidence in the light most favorable to the
15  prosecution, no rational trier of fact could have found the essential elements of the crime beyond
16  a reasonable doubt." *Johnson v. Montgomery*, 899 F.3d 1052, 1056 (9th Cir. 2018). Federal
17  courts look to state law for the elements of the specific offense at issue. *Maquiz v. Hedgpeth*, 907
18  F.3d 1212, 1218 (9th Cir. 2018). When a federal habeas court reviews an insufficiency claim
19  previously rejected on the merits by the state court, "a second level of deference applies under
20  AEDPA" such that, to prevail, a petitioner must show that the "state court's determination that a
21  rational jury could have found each required element proven beyond a reasonable doubt was not
22  just wrong but was objectively unreasonable." *Johnson*, 899 F.3d at 1056-57.

23  Of relevance here, first-degree burglary is defined as entering an inhabited apartment with
24  the intent to commit any felony. Cal. Penal Code §§ 459, 460(a). "Commonly, that intent must
25  be inferred from the circumstances of the charged offense or offenses." *People v. Holt*, 15 Cal.
26  4th 619, 669 (1997). "While the existence of the specific intent charged at the time of entering a
27  building is necessary to constitute burglary in order to sustain a conviction, this element is rarely
28  susceptible of direct proof and must usually be inferred from all of the facts and circumstances

14

disclosed by the evidence." *Id.* at 669-70.

Here, Petitioner argues that "a significant amount of information is known about what [he] did, and did not do, after he entered M.T.'s home" and that information "points towards a conclusion that he was more likely to have intended the crime which he actually committed – sexual battery – rather than theft, rape or sexual battery by restraint." (Doc. 1 at 40). Petitioner challenges "[t]he state court's factual determination" that he may have harbored the requisite intent but "subsequently abandoned his initial intent during the course of the burglary." (*Id.* at 42-46).

In response, Respondent argues that "the state court did not even make a clear determination that Petitioner had abandoned his initial intent," instead opining that he "may have subsequently abandoned his initial intent," and whether abandonment occurred or not "does not undermine the jury's findings." (Doc. 15 at 21). Respondent asserts "[a] fairminded jurist could agree th[e] evidence was sufficient for the jury to reasonably infer that Petitioner entered M.T.'s residence with the intent to commit theft or rape." (*Id.*).

Petitioner clarifies in his traverse that "[t]he one and only issue is whether the state court's speculative finding that Tafoya 'subsequently abandoned his initial intent during the course of the burglary' was an unreasonable determination of the facts." (Doc. 19 at 20).

Petitioner's challenge to the state court's factual determination takes the portion of a single sentence in the opinion out of context. The paragraph where the quoted portion appears reads in its entirety:

> Insofar as Tafoya observes that he did not actually steal anything, rape M.T., or restrain her when he groped her, the jury was persuaded beyond a reasonable doubt that Tafoya possess the requisite intent to support his conviction for burglary. The fact that Tafoya *may* have subsequently abandoned his initial intent during the course of the burglary does not undermine the jury's finding.

(Doc. 13-13 at 6). Thus, as Respondent argues, the state appellate court did not make an explicit finding that Petitioner abandoned his initial intent but rather opined that the fact that he could have committed one of the target offenses does not undermine the jury's determination that he entered the apartment with the intent to commit such an offense.

Further, an independent review of the evidence supports the state appellate court's decision that there was sufficient evidence to support the jury's guilt finding. The victim testified that she was woken up by someone touching her chest under her shirt; once awake, she realized that instead of her son, it was a man kneeling in her room; when she got out of bed, the man walked straight out her front door; she chased him outside of the home into the bushes; she went to her cousin's house next door for help; the man came out of the bushes in a "'What are you going to do' kind of stance;" and the victim returned to her apartment while the man returned to the bushes. (Doc. 13-6 at 31-36, 40-41). The victim identified Petitioner as the man she saw the night in question. (*Id.* at 36). As the state appellate court concluded, based on this evidence, the jury could reasonably infer Petitioner entered the apartment with the requisite intent to support his burglary conviction. The fact that Petitioner did not actually commit a theft or felony does not absolve his liability for the burglary. *People v. Montoya*, 7 Cal. 4th 1027, 1041-42 (1994) ("One may be liable for burglary upon entry with the requisite intent to commit a felony or a theft (whether felony or misdemeanor), regardless of whether the felony or theft committed is different from that contemplated at the time of entry, or whether any felony or theft actually is committed."). Thus, the state court's decision was not "objectively unreasonable" as required for Petitioner to be entitled to habeas relief. *Johnson*, 899 F.3d at 1056-57.

Accordingly, the state court's rejection of Petitioner's sufficiency of the evidence claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts. The undersigned recommends that ground two be denied.

### IV.    CERTIFICATE OF APPEALABILITY

"[A] state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application." *Miller-El v. Cockell*, 537 U.S. 322, 335-36 (2003). Rule 11 of the Rules Governing § 2254 Cases requires a court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this showing for claims rejected on procedural grounds,

a movant must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of denial of a constitutional right and that jurists of reason would find it debatable whether the district was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a claim is rejected on the merits, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a certificate of appealability.

Because Petitioner has not made a substantial showing of the denial of a constitutional right, the undersigned recommends that the court decline to issue a certificate of appealability.

## V. RECOMMENDATION

For the reasons set forth above, it is **RECOMMENDED**:

1. Petitioner be DENIED all relief on his Petition for Writ of Habeas Corpus (Doc. 1); and

2. Petitioner be denied a certificate of appealability.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **14 days** of service, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 2, 2025**                          _____
                                                    UNITED STATES MAGISTRATE JUDGE